### TIMOTHY H. PRUDDEN

*v.*

### OSCAR LINDSLEY and others.

1. Where land was conveyed to trustees in trust, for the purposes of a school, *Held,* that dedication by them of part of it to the purposes of a public highway, was inconsistent with the purposes of the trust, and therefore would not be presumed.

2. The injury to the complainant by the obstruction of the alleged highway, appearing to be not irreparable, interference of equity denied.

Bill for relief. Motion to set aside verdict on feigned issue.

*Mr. Alfred Mills* and *Mr. B. Williamson,* for the motion.

*Mr. George T. Werts, contra.*

Prudden *v.* Lindsley.

THE CHANCELLOR.

The bill was filed for an injunction restraining the defendants from building a house (a school-house) on what is alleged by the bill to be a public highway, and against the barn and shop of the complainant, which front on the highway.

It appears from the answer, that the defendants, who were trustees of the school-district, did, in fact, when the bill was filed, intend to build a school-house up against the above-mentioned buildings of the complainant, in such a way as absolutely to deprive him and the public of access thereto and therefrom by the alleged highway. They had entered upon the work of constructing the school-house when the bill was filed. The bill states that the complainant has been the owner and possessor of the land on which his buildings (the barn and shop above mentioned) stand, for more than forty years; that during all that time the highway has been, and for many years previously was in existence, and his land fronted upon it for the distance of over three hundred feet, and indeed was bounded by it on the whole of its southerly side; that the highway has been in all respects, for more than forty years, a public highway leading from one public road to another; that the barn was on the complainant's land when he bought it, and was, and ever since has been, in the same place; that more than twenty years ago he built the shop in the place in which it now is, fronting on the highway in question, and it has ever since so remained; that more than twenty-five years ago he built an addition to the barn, and that the barn and addition have together a front of at least fifty feet on the highway, and all the doors, except the back barn doors, are on it. It further states that the land in the rear of the buildings is low and swampy. The bill expressly alleges that for more than forty years the highway has been, in all respects, used and treated by the public as a public and open highway, and has been worked and repaired by different overseers of the roads and other persons, as such. The injury which was threatened was apparently of such a character as to warrant

the interposition of this court, and therefore, on the filing of the bill, an injunction was issued restraining the defendants from proceeding with the work of constructing the school-house.

The defendants, by their answer, admit, as before stated, that they were proceeding to erect the school-house across the alleged highway and against the complainant's buildings, and that they had shut up the alleged highway. They claim a right to do so on the ground that the trustees of school-district No. 72, in the county of Morris (they being the trustees), hold the title in fee to the land on which the alleged highway is, and that that land has been held by trustees in trust—"for the use of the school in Green Village or the building of a school-house, or, if it should be required to be put to that use, to be kept for the use of the school in Green Village as long as grass grows and water runs,"—since the year 1813, when it was conveyed on that trust to Zophar Freeman and others. By an act of the legislature, passed in 1875, the title to it was vested in the trustees of the school-district. They deny that there was ever any public highway as claimed by the complainant, or any public highway at all upon the premises, while they admit, that by the building of a fence, as they allege, in 1855, but as the complainant insists, in 1854, around their lot, a space was left for the whole width of it adjoining the southerly line of the complainant's land, and that that has been used by the public in common with the children attending the school, but they expressly deny that it has been a public highway.

After the answer was filed, a motion was made on behalf of the defendants for a feigned issue, to be framed in the supreme court, to determine by the verdict of a jury of the county of Morris, in which the premises are, "whether there is a public road on the premises mentioned and described in the pleadings in this cause, and in the answer alleged to be the property of 'The Trustees of School-District, No. 72, in the county of Morris,' and if there be such

road, whether it bounds, along its southerly side, the land of
the complainant described in the bill of complaint in this
cause, and how long such road has existed." The motion
was granted, and an order was made accordingly, an issue
was framed and it was tried in the circuit court of Morris
county, before Justice Reed. It appears by the *postea* that
the jury found " that there is a public road on the premises
mentioned and described in the pleadings in this cause, and
in the answer alleged to be the property of The Trustees of
School-District, No. 72, in the county of Morris, and that
said road bounds along its southerly side the lands of said
Timothy H. Prudden, described in the bill of complaint, and
that said road has existed for over twenty-three years."
The issue was tried on the 7th of December, 1875. The
jury therefore found that the road had existed from a period
prior to 1852. The justice certifies that the questions were
presented in a manner that made the verdict of the jury
upon them, in his opinion, conclusive, and adds,.that he is
therefore satisfied with the verdict as to its result in finding
a highway.

The defendants move to set aside the verdict, on the ground
that inasmuch as the title to the land on which the alleged
highway is, was held in trust as before mentioned, no dedi-
cation can be presumed, for no grant can be presumed, seeing
that the trustees could not have granted to the public the
easement claimed, without a breach of their trust. Ever since
1813, the legal title to the property has been in the trustees.
Their *cestuis que trust*, in whom was the equitable title, were,
according to the deed, " the inhabitants of Green Village and
its vicinity." The land from 1813 to 1854 or 1855, when the
fence was built, a period of more that forty years, was unoc-
cupied except as a play-ground for the school children. In
1854 or 1855 a public fair was held by the ladies of Green
Village and vicinity, in order to raise money to put an iron
fence around the lot, and to improve it otherwise. The
result was the grading of the lot and the building of the
fence. The fence was so placed as to leave the part of the

Prudden *v.* Lindsley.

lot now claimed to have been long prior to that time a public highway, open to the use of the public, and it so remained from that time up to the time when the trustees began to build the school-house, just before the filing of the bill. It is a primary condition of every dedication, that it must be made by the owner of the fee. Trustees in whom the title to land is vested for a special purpose incompatible with the public use of it as a highway, are incapable in law of making a dedication of it to the purposes of a public highway. *Rex* v. *Leake*, 5 *Barn. & Ad.* 469. No actual grant was made in the case before me, and of course none will be presumed which the trustees were incapable of making. They held the land upon an express and explicit trust for the use of the school or the building of a school-house. It was entirely incompatible with those purposes that it should lie open and unfenced. It was not compatible with those purposes that any part of it should be granted for the purposes of a public highway. The evidence of user by the public of the part in question in this suit, is rather of user for access to the shop of the complainant than for a highway generally. There is evidence that the travel was not confined to the strip adjoining the complainant's land, but that in going from one road to the other the public sometimes drove over the lot without regard to the beaten track along the complainant's land. There is evidence, too, of the occupation of part of the very ground alleged to have been dedicated to the purposes of a highway, for the use of the school children. The proof is not clear that the iron fence was erected as early as 1854, and there is evidence that when it was erected in its present location the complainant claimed title to the part of the lot now alleged to have been devoted to the use of the public, and that the location of the fence, apparently in deference to his claim, was made under protest and was accompanied with a claim of right to the part of the lot which was not included within the fence. The proof that the road was treated as a public highway in the public maintenance and repair of roads, is

but slight at best. But beyond these considerations in respect to the evidence, it is obvious that whatever the public user might have been, no dedication could, for the reason already given, be presumed.

The object of the issue was merely to inform the conscience of the court, and the finding of the jury is in no sense binding on the court. The question as to the power of the trustees to grant the land for a highway, was not raised on the trial of the issue, but was raised for the first time on the motion to set aside the verdict. Inasmuch as there could be no dedication, the complainant has no claim to relief. But if it were merely doubtful whether the trustees had the power to dedicate, this court would not aid the complainant by its injunction. The threatened injury to him is not such as to make it incumbent on the court, if the right were merely doubtful, to retain the injunction until the question of legal right could be determined. The law provides a way to redress the injury to the public, for the illegal stoppage of a public highway, and the special injury to the complainant is not of such magnitude as to warrant this court in entertaining jurisdiction by injunction. *Morris & Essex R. R. Co.* v. *Prudden*, 5 *C. E. Gr.* 530. The complainant's barn and shop may be reached from each of the main roads, by a way on his own premises. The injunction will be dissolved, and the bill dismissed with costs.